1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **MARIA AVALOS RIVERA,** | ) | **NO. CV 14 -09217-KS** |
| **Plaintiff,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

# INTRODUCTION

Plaintiff Maria Avalos Rivera ("Plaintiff") filed a Complaint on December 1, 2014, seeking review of the denial of her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1.) On September 14, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which Plaintiff seeks an order reversing the Commissioner's final decision, and either ordering the immediate payment of benefits or remanding the matter for further administrative proceedings. (ECF No. 27, Joint Stip. 42.) The Commissioner requests that the Court uphold the ALJ's decision or, should the Court reverse the decision, remand to the agency for further administrative action. (*Id.* 43.) On August 12, 2015, the parties consented,

1

pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF Nos. 24, 25.) Having carefully reviewed the parties' respective contentions, the Court has taken the matter under submission for decision without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB on August 25, 2011 and for SSI on September 16, 2011, alleging disability commencing January 6, 2008. The alleged onset date was later amended at Plaintiff's request to January 2009.[1] (Administrative Record ("A.R.") 152-53 (DIB); 154-60 (SSI). Plaintiff was 46 years old, which is defined as a younger individual age 18-49, on the alleged onset date. (*Id*. 152.)[2] Plaintiff's prior relevant work experience was as a produce packer. (*Id*. 57.) Plaintiff's claims were initially denied on January 20, 2012. (*Id*. at 29.) On February 23, 2012, Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On April 11, 2013, Plaintiff appeared and testified, with the assistance of a Spanish language interpreter, before ALJ Robert S. Eisman. (*Id*. at 48-78.) Freeman Leeth Jr., a vocational expert ("VE") also appeared and testified at the hearing. (*Id*. at 72-77.) The ALJ issued an adverse decision on June 17, 2013. (*Id*. at 23-45.) On September 20, 2014, the Appeals Council denied Plaintiff's request for review. (*Id*. 1-9.) Plaintiff then filed this timely civil action.

//
//
//
//

---

[1] At the hearing, based on Plaintiff's testimony that she worked through December 2008, Plaintiff asked to amend the alleged onset date to January 6, 2009. (A.R. 54-55.)

[2] Plaintiff's date of birth is December 12, 1964. (A.R. 152.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step evaluation process for determining whether a person is disabled as required under 20 CFR §§ 404.1520(a) and 416.920(a), the ALJ first found that Plaintiff had not engaged in substantial gainful activity since January 6, 2008, the alleged onset date.  (A.R. 31.)  The ALJ next found that Plaintiff had the following severe impairments:  depressive disorder, not otherwise specified; and left knee degenerative joint disease, status post arthroscopic chondroplasty with medial and lateral meniscectomy (2009), which have more than a minimal effect on Plaintiff's capacity for basic work functions.  (*Id.*)  The ALJ noted that Plaintiff also had left median neuropathy at the wrist and left ulnar neuropathy. (*Id.*)  However, the ALJ determined that the symptoms associated with the neuropathy were "not as severe as alleged" because the "evidence does not show [Plaintiff] has sought out, been referred to, or was advised to undergo any care for the complaints."  (*Id.*)  The ALJ further noted that despite the neuropathy symptoms, Plaintiff "reported remaining independent in her personal care, she can perform some light household chores, occasionally prepare meals, and do laundry."  (*Id.*)

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (A.R. 32.)  Specifically, the ALJ determined that Plaintiff's mental impairment due to depressive disorder did not meet or medically equal the criteria of listing 12.04 sufficient to satisfy the "paragraph B" criteria.[3]  (*Id.*)  The ALJ found that Plaintiff had mild restriction in activities of daily

---

[3] To satisfy the "paragraph B" criteria, a mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in social functioning, marked difficulties in maintaining, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  (A.R. at 32.)

living; mild difficulties in social functioning; moderate difficulties with concentration, persistence or pace; and had experienced no episodes of decompensation that were of extended duration.  (*Id.* at 33.)

After considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c); that Plaintiff "can exert 20 to 50 pounds of force occasionally and/or 10 or 20 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects." (*Id.*)  In addition, the ALJ found that Plaintiff

> can exert no more than 30 pounds of force with her non-dominant left upper extremity.  She can stand and walk up to 6 hours and sit up to 6 hours in an 8-hour workday with normal breaks.  [Plaintiff] can do work that does not require running, jumping or similar weight-bearing activities involving her left lower extremity.  She can frequently stoop and climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; and would not be required to kneel or crawl.  Crouching could be done occasionally, but not to the point where the thighs are parallel to the ground or lower (i.e., crouching would not be required at or below 90 degrees from an erect position).  [Plaintiff] can frequently push, pull, lift, reach and handle objects with her non-dominant left upper extremity.  [Plaintiff] cannot operate foot controls more than occasionally with the left lower extremity.  [Plaintiff] can have no more than concentrated or frequent exposure to unprotected heights.  She has a somewhat limited ability to communicate in English.  In addition, she can do work that is limited to the performance of simple, routine tasks, i.e., where the complexity of work tasks is learned and performed by rote, with few variables and little judgement.

(*Id.*)   Based on this RFC, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a packager (DOT 920.587-018)[4] because "this work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC]." (*Id*. at 39.)

After considering Plaintiff's age, education[5], work experience, and RFC, the ALJ made the alternative 5-step determination that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the work of laundry worker, laborer, and machine feeder.  (A.R. at 41.)   The ALJ concluded that Plaintiff did not suffer from a disability from January 6, 2008 through the date of the ALJ's decision.  (*Id.* at 41.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

---

[4] DOT refers to the Dictionary of Occupational Titles. ALJs rely on the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).
[5] Plaintiff testified at the hearing that she came to the United States in 1981 and completed high school in Mexico. (A.R.52.)

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in his/her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (*quoting Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also, Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## DISPUTED ISSUES

Plaintiff contends that the Commissioner's decision should be reversed based on the following alleged defects in the ALJ's decision:

1.  The ALJ did not properly consider probative medical source opinions;
2.  The ALJ incorrectly found Plaintiff capable of performing her past relevant work and the other identified work at step 5; and

6

3.  The ALJ failed to provide clear and convincing reasons for finding Plaintiff not credible.

For the reasons discussed below, the Court finds no legal error in the ALJ's decision and concludes the Commissioner's decision must be affirmed.

## DISCUSSION

## 1.  The ALJ Properly Considered the Medical Source Opinions of Dr. Siebold

With respect to Issue No. 1, Plaintiff argues that the ALJ failed to properly "translate" Dr. Richard M. Siebold's finding in a 2010 worker's compensation Agreed Medical Examiner ("AME") report that Plaintiff could sustain "no prolonged weight bearing" on her left knee. (Joint Stip. at 6.) Dr. Siebold acted as the AME in Plaintiff's workers' compensation claim. (AR 652-86.) Plaintiff further argues that the ALJ failed to properly assess the opinions of Dr. Siebold by rejecting his opinions without offering specific and legitimate reasons for doing so. (Joint Stip. at 8.) In response, Defendant argues that the ALJ committed no reversible legal error in assessing Dr. Siebold's opinions because: (1) the ALJ has no duty to "translate" workers' compensation terms of art; and (2) Dr. Siebold's limitation as to Plaintiff's left knee are entirely consistent with and support the ALJ's RFC finding. (Joint Stip. at 9.) After careful review of the parties' contentions and the record in this matter, the Court agrees with Defendant and finds no legal error in the ALJ's consideration of Dr. Siebold's opinions.

First, as Defendant rightly points out, *Desrosiers v. Sec'y of Health & Human Svcs.*, 846 F.2d 573 (9th Cir. 1988) does not hold that an ALJ must "translate" workers' compensation terms of art.  Rather, in *Desrosiers,* the Ninth Circuit noted

7

that under California's workers' compensation system, the categories used to characterize what level of work the claimant was capable of performing were not based on strength,  but "on whether a claimant sits, stands, or walks for most of the day." *Id.* at 576.   The *Desrosiers* court further emphasized that "[t]he categories of work under the Social Security disability scheme are measured quite differently. They are differentiated primarily by step increases in lifting capacity." *Id.* Under the facts of that case, the Ninth Circuit found that the ALJ "did not adequately consider [the] distinction." *Id.*

Indeed, other authorities expressly hold that an ALJ is not required to explicitly "translate" workers' compensation terminology into Social Security terminology. *See e.g., Booth v. Barnhart,* 181 F. Supp. 2d 1099, 1106 ( ALJ's decision need not contain an explicit "translation" of worker's compensation terms of art).   Furthermore, the California workers' compensation guidelines for work capacity are not conclusive in a social security case." *Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996) (citing *Desrosiers*, 846 F.2d at 576).   The ALJ "only had an obligation to recognize the differences between the two statutory schemes." *Gonzalez v. Colvin*, No. CV 14-021414 AN, 2014 U.S. Dist. LEXIS 172295, *3 (C.D. Cal. Dec. 10, 2014.)

Here, the ALJ satisfied that obligation.   First, the ALJ acknowledged the numerous statements in the record related to Plaintiff's workers' compensation claim and specifically noted that "these determinations were made using criteria based upon rules of another agency." (A.R. at 38.)  Second,  while the ALJ found Dr. Siebold's opinion relating to "prolonged" weight bearing and the impairment rating that Dr. Siebold assigned to be "vague and imprecise," the ALJ also acknowledged this limitation was otherwise "consistent with the imaging studies in evidence, examinations of [Plaintiff], and [Plaintiff's] reported activities."   (A.R. at 38.) Further, the RFC limitations are consistent with Dr. Siebold's limitations insofar as

the ALJ determined that Plaintiff "can stand and walk up to 6 hours and sit up to 6 hours in an 8-hour workday with normal breaks" and that she "can do work that *does not* require running, jumping *or similar weight-bearing activities involving her left lower extremity*."  (A.R. 34 (emphasis added).)

This Court also finds no inconsistency between Dr. Siebold's opinion regarding no "prolonged weight bearing" on Plaintiff's left knee and the ALJ's RFC finding that Plaintiff could walk up to 6 hours of an 8-hour workday with normal breaks.  The amount of time Plaintiff is deemed capable of standing while performing work is essentially the same under both standards where, as Defendant points out, the Workers Compensation Schedule for Rating Permanent Disabilities, indicates that a Disability Precluding Prolonged Weight-Bearing "contemplates ability to do work approximately 75% of time in standing and walking position, and requires a sitting approximately 25% of time."  State of California Department of Industrial Relations, Division of Workers' Compensation, Schedule For Rating Permanent Disabilities. Lower Extremity Guidelines, at p. 2-19 (April 1997) (available at www.dir.ca.gov/dwc/DFR1997.pdf).[6]  Seventy-five percent of 8 hours is exactly 6 hours.

Finally, even if the ALJ somehow erred in finding Dr. Siebold's use of the term "prolonged weight bearing" to be vague, the error was clearly harmless because the ALJ not only gave partial weight to the opinion, but found the opinion consistent with the evidence in the record and made an RFC determination that incorporated limitations entirely consistent with Dr. Siebold's findings and limitations with regard to Plaintiff's left knee.  (A.R. at 38.)  *See also, Molina v. Astrue*, 674 F. 3d 1104, 1111

---

[6] Plaintiff argues that she "has severe knee problems that preclude her from prolonged walking" and that Dr. Siebold's opinions "would preclude medium exertion work because of the inability to engage in prolonged weight bearing activities."  (Joint Stip. at 8.)  However, as the ALJ noted, Plaintiff herself testified that she goes for walks sometimes once a week because it helps her health and "helps [her] to move way the depression."  (A.R. at 69.)

(9th Cir. 2012) (court "may not reverse an ALJ's decision on account of an error that is harmless.")  Accordingly, this Court finds no material error in the ALJ's assessment of Dr. Siebold's medical opinions.

**2.  The ALJ Did Not Err in Finding Plaintiff Capable of Performing Her Past Relevant Work and the Alternative Identified Work at Step 5.**

In issue two, Plaintiff raises two challenges to the ALJ's findings.  First, Plaintiff  challenges the ALJ's finding at step four that Plaintiff is capable of performing her past relevant work as a packager both as actually performed and generally performed under DOT 902.587-018, in light of the RFC finding that she can frequently reach and handle objects with her non-dominant left upper extremity. (Joint Stip. at 10-14.)  Second, Plaintiff contends that the ALJ erred in finding at Step 5 that Plaintiff can perform alterative work as a laundry worker, laborer, and machine feeder.  (Joint Stip. at 14-17.)  Both arguments are without merit.

**a.  The ALJ's  Finding that Plaintiff is Capable of Performing Her Past Relevant Work as a Packager**

In step four of the sequential disability analysis, the ALJ determined that Plaintiff could perform her past relevant work as a packager (DOT 920.587-018) both as actually performed and generally performed.  (A.R. at 39-40.)  Plaintiff argues that the ALJ's determination that Plaintiff could perform her past relevant work as generally performed constitutes legal error in light of the RFC.  (Joint Stip. at 10.) Defendant responds that there is no conflict between the VE's testimony that Plaintiff could work as a packager, even though the DOT description requires "constant reaching" and the RFC, which only allowed for frequent reaching and handling with

Plaintiff's non-dominant left upper extremity and unlimited reaching on the right. (Joint Stip. at 18.)

At step four of the disability determination, Plaintiff has the burden of showing that she can no longer perform her past relevant work. *Bustamante v. Massanari*, 262 F. 3d 949, 953-54 (9th Cir. 2001). In order to be able to perform past relevant work, the claimant must be able to perform either the:

1.  Actual functional demands and job duties of the specific past relevant job; or

2.  Functional demands and job duties of the occupation as *generally* required by employers throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (*quoting* Social Security Ruling 82-61) (emphasis added). SSR 82-61 specifically notes that "[DOT] descriptions can be relied upon — for jobs that are listed in the DOT— to define the job as it is *usually* performed in the national economy[.] It is understood that some individual jobs may require somewhat more or less exertion than the DOT description." SSR 82-61 (*emphasis* in original).[7] The DOT raises a presumption as to job classification that is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). While the burden at step four rests with the claimant, the ALJ "still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari,* 249 F.3d at 844.

In *Pinto*, the Ninth Circuit remanded a social security appeal to the district court with directions to further remand to the Commissioner for further factual findings

---

[7] Available at https://www.socialsecurity.gov/OP_Home/rulings/di/o2/ssi.

11

where an ALJ determined that the claimant could perform past relevant work that required constant standing, bending or stooping, even though the ALJ found that the claimant could not stoop, climb or balance more than occasionally. *Pinto v Massanari*, 249 F.3d at 843.

In this case, unlike in *Pinto*, there is no inconsistency between the RFC and the VE's testimony that Plaintiff can perform her past relevant work. The DOT provides that the work of a hand packager requires "Reaching: Constantly – Exists up to 2/3 or more of the time." *See* DOT 920.587-018. The DOT guideline does not expressly require constant reaching with *both* arms. *See Palomares v. Astrue*, 887 F. Supp.2d 906 (N.D. Cal. Aug. 13, 2012) (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *McConnell v. Astrue*, 2010 WL 1946728 at *6-7 (C.D. Cal. May 10, 2010) (holding that jobs requiring reaching and handling did not exceed the plaintiff's limitation to work with one hand as there was no express bilateral requirement in the DOT for those positions).

At the hearing, the ALJ posed a hypothetical that asked the VE to assume:

> a person the claimant's age, education, work experience and skill set, who is able to perform medium work, as defined in the regulations, including exerting 20 to 50 pounds of force, occasionally, and/or 10 to 20 pounds of force, frequently, and/or greater than negligible, up to 10 pounds of force, constantly to move objects. *However, with the left-upper extremity alone, the force would be limited* to no more than 30 pounds, of force.

(A.R. 72 (emphasis added).)  A second hypothetical asked the VE to assume, among other things,  "[t]his person would perform work that does not require running,

jumping, or similar weight-bearing activity, involving the left-lower extremity" and "the person would not be required to crawl or kneel," could "operate foot controls, no more than occasionally with the left-lower extremity." (A.R. 74.) In response, the VE testified that, given this set of criteria, such a person could perform Plaintiff's past relevant work both as generally and actually performed. (*Id.*) Furthermore, the VE testified that his answers were consistent with the DOT. (*Id.* at 77.) In addition, the ALJ questioned Plaintiff about exactly how she had performed her previous work as a packager, including what types of produce she packed, how she used her hands on the job, how much she lifted, and stacked. (A.R. at 57-59.)

Accordingly, because the DOT does not require constant reaching with both arms, the Court concludes that there was no conflict between the VE's testimony relying on the RFC and the DOT, and on that basis the ALJ did not err on this issue.

### b. The ALJ's Finding that Plaintiff Can Perform Alternative Work Identified at Step 5

Plaintiff argues that the ALJ erred in the step 5 finding that determined Plaintiff capable of performing work as a laundry worker, laborer, and machine feeder, because the ALJ failed to properly consider Plaintiff's limited English speaking ability. (Joint Stip. at 14.) Specifically, Plaintiff contends that the DOT describes these jobs as "Language: Level 1," which requires a vocabulary of 2,500 words and an ability to read at a rate of 95-120 works per minute, that these requirements directly conflict with the ALJ's finding that Plaintiff has a "somewhat limited ability to communicate in English, and the ALJ erred by failing to explain the alleged inconsistency. (*Id.* at 22.) This argument is meritless.

First, as Defendant correctly points out, Plaintiff's past relevant work was a Language: Level 1 job and she performed that work for nearly fifteen years. (A.R. at 23.) Second, to the extent the ALJ had an obligation to resolve any conflict between the VE's testimony that Plaintiff could perform these alternative jobs and the language requirements of the DOT, the ALJ did, in fact, ask the VE if there was any conflict between the VE's findings and the DOT; to which the VE said there was none. (A.R. at 77). Contrary to Plaintiff's contentions, the DOT requirements are not minimum standards, rather, "the DOT lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4P, 2000 WL 1989704, at *3. The regulations also recognize that "the DOT does not preclude illiterate individuals from performing level 1 language jobs, otherwise illiteracy would be a per se disability." *Id.* (citing *Meza v. Astrue*, No. C-09-1409-EDL, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011.)).

Plaintiff testified that, despite not being fluent in English, she had performed her prior unskilled work as a packager at Seville Olive for fifteen year. (A.R. at 56.) She also testified that she studied English as a second language (*id.* at 52); understood most of what the ALJ was saying to her in English at the hearing (*id.*); could understand the stories in the *Los Angeles Time*s English language edition (A.R. at 53); and could write a grocery list of items to purchase at the supermarket (*id.*).

Finally, the decisions that Plaintiff relies upon for the proposition that the ALJ was required to determine whether Plaintiff knew up to 2,500 words in order to meet the Language Level 1 proficiency, do not require reversal here. All of the cases that Plaintiff cites are readily distinguishable. In *Singmuongthang v. Astrue*, 2010 WL 3715152, at *7 (E.D. Cal. Sept. 17, 2010), unlike here, the ALJ failed entirely to discuss the plaintiff's literacy in his decision. In *Her v. Astrue*, 2010 WL 30693330,

14

at *5 (E.D. Cal. Aug. 3, 2010), the claimant could not communicate in English at all and the court found the ALJ's finding at step five that the claimant could perform work requiring Language Level 1 proficiency lacked substantial support.  In *Lopez v. Astrue*, 2010 WL 2674432 at *3 (C.D. Cal. July 1, 2010),  the plaintiff contended that he had a very limited ability to read, speak and write in English, but the ALJ posed a hypothetical in which the individual had an "adequate ability" to read and write in English, which was not substantially supported by the record.  In *Mkhitaryan v. Astrue,* No. CV 09-6971-SH, 2010 WL 1752162, at *2 (C.D. Cal. Apr. 27, 2010), the plaintiff, an Armenian native, was also unable to communicate in English.  In *Diaz v. Astrue*, No. EDCV 08-445 CW, 2009 WL 176316, at *4 (C.D. Cal. Jan. 26, 2009), the plaintiff spoke only Spanish, but the VE in that case found the plaintiff could perform jobs requiring Language Level 2.  *In Mora v. Astrue*, No. EDCV 07-1527-MAN, 2008 WL 5076450, at *3-4 (C.D. Cal. Dec. 1, 2008), the court found remand appropriate where the plaintiff was illiterate,  but the VE testified that she could perform her past relevant work that required Language Level 1.  In *Turcios v. Astrue*, No. C 07-04668 CRB, 2008 WL 929122, at *9 (N.D. Cal. Apr. 4, 2008), the plaintiff was unable to read any English, but the VE testified that he could perform work that required English language skills.  Similarly, in *Villa v. Astrue*, No. CV 09-6488 JC, 2010 WL 3632823, *4 (C.D. Cal. Sep. 13, 2010), "the record [was] replete with evidence that plaintiff could not speak or understand English" and the ALJ failed to assess or consider her illiteracy in determining whether or not she could perform her past relevant job that "require[d] at least a modicum of ability to read, speak and understand English[.]"

Here, by contrast, the ALJ directly inquired of Plaintiff's skills in English, both verbal and written (A.R. at 52-53), and the ALJ's hypotheticals to the VE specifically included an assumption of "somewhat limited ability to communicate in English," an assumption wholly consistent with the record, including Plaintiff's own testimony.

(A.R. at 73.)   For all these reasons, this Court finds no internal inconsistency in the ALJ's finding at step five, that Plaintiff has limited ability to speak English and that she can perform the identified alternative work as a laundry worker, laborer, and machine worker, all positions that required Language Level 1, the same level of proficiency as the position Plaintiff successfully held for 15 years in her past relevant work.

Accordingly, the ALJ's findings at Step 5 are supported by substantial evidence and free of legal error.

### 3.  The ALJ's Reasons for Finding Plaintiff Not Credible

Although the ALJ found Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible."  (Joint Stip. at 34.)   With respect to Issue No. 3, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for finding Plaintiff not credible.  (*Id.* at 29-32.)   Defendant responds that the  "clear and convincing reasons" standard is not applicable, only the deferential "substantial evidence" standard need be applied here, but under either analysis, the ALJ provided sufficiently specific reasons for discounting Plaintiff's credibility.  (*Id.* at 32-42)   Next, Defendant argues that Plaintiff's argument fails because she only challenges one of the ALJ's reasons for discrediting her testimony, and on that basis, should be deemed to have waived all other objections.  (*Id.* at 33.)   For the reasons discussed below, this Court finds the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's credibility.

It is the ALJ's obligation to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (internal citation omitted). If the ALJ finds no evidence of malingering, and the claimant has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, "the ALJ can reject the claimant's testimony about the severity of her symptoms only offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F. 3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)).

The Commissioner disputes the standard of review, relying on the agency's own standards and "the extremely deferential 'substantial evidence" standard as discussed in *Lianhua Jiang v. Holder*, 754 F.3d 733, 738 (9th Cir. 2014). (Joint Stip. at 32.) The Ninth Circuit expressly rejected a similar argument in *Burrell v. Colvin*, 775 F.3d, 1133, 1136-37 (9th Cir. 2014) and, in *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015), has recently re-emphasized the "clear and convincing" requirement for finding a claimant's testimony not credible.[8]

The ALJ cited several specific inconsistencies in the record as the basis for finding Plaintiff's "allegations as to the intensity, duration and functionally limiting effects of her impairments not fully credible." (A.R. at 35.) First, the ALJ pointed to Plaintiff's own hearing testimony and the records of treating physician Dr. Charles Boyer at the Pain Relief Health Center (Exh. 13F, A.R. 404-77) and noted that, with respect to activities of daily living, Plaintiff retained the ability to:

---

[8] Defendant concedes in a footnote that the Ninth Circuit rejected the agency's argument that *Bunnell v. Sullivan* did not require clear and convincing reasons for rejecting a claimant's testimony, but the agency maintains the Ninth Circuit did not address whether the standard is "appropriate given 42. U.S.C.§ 405(g) and the agency's own standards." (Joint Stip. at 32, n.11)  The Court does not reach that issue here.

perform light household chores, shop with assistance, prepare some meals, maintain a residence, care for her children, care appropriately for her grooming and hygiene, , utilize community resources with assistance, manage her medical care and treatment, and perform light yard work.

(A.R. at 35.)   The ALJ found these activities inconsistent with the Plaintiff's allegations as to the severity of her symptoms and concluded these activities "indicate she is not as restricted in her activities as alleged."   (*Id.*)   Indeed, Plaintiff is not required to "vegetate in a dark room" and Plaintiff correctly points out that the ability to perform home activities is not necessarily transferable to the ability to perform in the workplace.   (Joint Stip. at 30-31 (citing, *inter alia*, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987);   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But the ALJ can, and did,  properly find such activities to be inconsistent with Plaintiff's allegations of totally disabling pain.  *See e.g.,  Rollins v. Massanari*, 261 F.3d  853, 857 (9th Cir. 2001).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.* (citing 20 C.F.R. § 404.1529(C) (2)).   In this instance, the ALJ also pointed out other evidence in the record that supports the ALJ's credibility assessment.[9]  For example, Plaintiff testified she underwent arthroscopic knee surgery in 2009.  (A.R. at 59.)  The ALJ determined that the medical evidence following the surgery showed Plaintiff did not require additional treatment and  Plaintiff testified that she is able to walk once a week for exercise  (A.R. at 69.)

---

[9] Defendant  argues that Plaintiff has waived objections to all but one of the reasons the ALJ identified for finding the Plaintiff not entirely credible.  (Joint Stip. at 32-33.)  However, this Court, in analyzing the legal adequacy of the ALJ's reasons for discounting Plaintiff's credibility, will examine all of the reasons the ALJ identified.  Consequently, the Court need not address Defendant's waiver argument.

The ALJ also pointed to the medical records of Plaintiff's post-surgery follow-up care that indicate by January 2010, Plaintiff reported decreased left knee pain following surgery. (A.R. 35; *see also* A.R. 769 (Exh. 18F at 84).)  By March 2010, Plaintiff again reported decreased left knee pain and swelling, and "[d]ecreased buckling – no locking." (A.R. 35; *see also*, A.R. 771 (Exh. 18F at 86).)  The ALJ referenced an examiner's findings in 2012 that Plaintiff's "condition or state is well-stabilized and unlikely to change in the next year with or without medical treatment." (A.R. 36; citing A.R. 414 (Exh. 13F at 13).)  Based on the  treating records and Plaintiff's testimony, the ALJ concluded that:

> It appears from the evidence that her symptoms are effectively controlled with medication and a continued home exercise program.  . . . Moreover, treatment records show overall her physical examinations pertaining to her left knee have been unremarkable. . . . There is no evidence in the record [Plaintiff] has been advised or sought out a higher level of care for her complaints.  During her most recent examination, she was opined to be stable without need for additional treatment.

(A.R. at 35.)

With respect to Plaintiff's psychiatric complaints, the ALJ noted that she reported symptoms of depression and was diagnosed in 2010 with a depressive disorder, not otherwise specified.  (A.R. at 36, citing A.R. 615-651 (Exh. 16F).)  He also pointed out that while Plaintiff testified she continues to receive regular mental health treatments services, including group therapy, the "evidence shows she is able to attend to her personal needs, manage a household, maintain relationships with family and friends, and effectively communicate with others."  (A.R. at 36.)  In addition, the ALJ pointed out  that while Plaintiff had been diagnosed and treated for depression,

19

the level of care she is receiving is conservative and appears to have effectively controlled her symptoms. In fact [Plaintiff] reported she regularly spends time with others, regularly gets out of the house, maintains her personal care and hygiene, and is able to remain independent in her activities of daily living. These activities indicate that her current level of treatment has effectively controlled her symptoms. There is no evidence [Plaintiff] has required or sought out a higher level of care for any psychiatric complaints.

(A.R. at 39.)

It is true that Plaintiff testified that she had assistance from her children with household chores and shopping (A.R. 68), and reasonable minds may differ as to the ALJ's interpretation of that testimony, but it is a rational one, supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). When, as here, the evidence is subject to more than one rational interpretation and the ALJ's reasoning is "supported by inferences reasonably drawn from the record," we must uphold the ALJ's findings. *Molina v. Astrue*, 674 F.3d at 1110.

Consequently, the Court rejects Plaintiff's argument that the ALJ improperly assessed her credibility. The ALJ gave specific, clear and convincing reasons for finding Plaintiff's allegations of the severity of her symptoms and limitations not entirely credible and those reasons are supported by substantial evidence.

\\
\\
\\
\\

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

DATED: January 7, 2016

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE